UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------- X
                                                :

SAWSAN KHALIL-MIRHOM and ADEL KHALIL-    :     12-CV-5512 (ARR) (VVP)
MIRHOM,
                                                :     <u>OPINION & ORDER</u>

                Plaintiffs,                          :

    -against-                                      :

KMART CORPORATION and SEARS HOLDINGS    :
MANAGEMENT CORPORATION,
                                                :

                Defendants.                       :
------------------------------------------------------------------- X

ROSS, United States District Judge:

       Plaintiff Sawsan Khalil-Mirhom ("Plaintiff") brings this negligence action against defendants Kmart Corporation ("Kmart") and Sears Holdings Management Corporation ("Sears Holdings") for injuries that she allegedly sustained when she tripped and fell at a Kmart on Hylan Boulevard in Staten Island, New York. Plaintiff's husband, Adel Khalil-Mirhom ("Plaintiff Husband"), also brings a derivative suit for deprivation of his wife's society, services, and consortium following her injury. Defendants move for summary judgment on the grounds that Plaintiff has failed to adduce any triable issues of fact on her negligence claim. For the reasons stated below, defendants' motion is granted in part and denied in part.

**BACKGROUND**

       Unless otherwise noted, the following facts are not in dispute. Both plaintiffs are citizens of the State of New York. Compl. ¶ 1. Defendant Kmart is, and was at the time of the accident, incorporated in Michigan and has its principal place of business in Hoffman Estates, Illinois. Defs. Mem. of Law in Resp. to Ct.'s Order to Show Cause, Dkt. #26, at 2. Defendant Sears

Holdings is, and was at the relevant time, incorporated in Delaware and has its principal place of business in Hoffman Estates, Illinois.[1]  Id. at 3.

In November 2009, Plaintiff was working as a paraprofessional at Susan E. Wagner High School.  Defs. Rule 56.1 Statement of Facts ("Defs. Facts") ¶ 3.  She was assigned to assist and supervise a student at the high school named Michael Amoroso, who was wheelchair bound and visually impaired.  Id. ¶ 6.  Mr. Amoroso participated in the Kmart School Work Program (the "Program"), and, as part of the Program, Plaintiff accompanied him to the Kmart store located at 2660 Hylan Boulevard in Staten Island, New York, several times per week.  Id. ¶¶ 1, 4-5.  While at the store, paraprofessionals, including Plaintiff, supervised the students participating in the Program while they performed various work tasks.  Id. ¶ 5.  Among the tasks to which Program participants could be assigned was working in the stockroom, which was approximately twenty feet wide by ten feet deep.  Id. ¶ 7.  Program participants assigned to the stockroom worked in an area of the room that was near the entrance and approximately ten feet wide and six feet deep.  Id. ¶ 8.  There were typically three to five Program participants assigned to the stockroom on a given day, id. ¶ 8, and they were not supervised by Kmart employees, id. ¶ 9.  While Program participants were working, however, one or two Kmart employees entered the stockroom from time to time to remove shoe boxes from the room.  Id.

On November 20, 2009, Plaintiff accompanied Mr. Amoroso to the Kmart store on Hylan Boulevard.  Id. ¶¶ 1, 11.  They arrived at the store around 9:30 a.m. and went immediately to the

---

[1] In their Notice of Removal, Kmart and Sears listed their principal places of business as, respectively, Cattaraugus County and Westchester County, which are both counties in New York.  Notice of Removal, Dkt. #1, ¶ 3.  Having principal places of business in New York would make defendants citizens of the state such that there would not be complete diversity in this case.  Accordingly, the Court issued an order to show cause why the action should not be remanded for lack of subject matter jurisdiction.  Dkt. #24.  Defendants' response clarifies that there was an error in their previous submissions and that they, in fact, have their principal places of business in Illinois.  Plaintiffs have not submitted any opposition to defendants' submissions, and the Court therefore finds that there is diversity of the parties and that it may exercise jurisdiction over the action.

stockroom, where another paraprofessional, Ana T. Jost, was also assigned to work with her student. Id. ¶ 11. On that day, Plaintiff assisted Mr. Amoroso with removing tissue paper from shoeboxes in the stockroom. Plaintiff removed shoe boxes from larger cardboard boxes that were stacked on a wooden pallet that, according to Ms. Jost, was across from the stockroom entrance. Id. ¶ 12-14. According to Ms. Jost's testimony, the wooden pallet, which was located about eight feet from the double-door entrance, was always in that location. Id. ¶ 12. Also according to Ms. Jost, the pallet, which was made of oak-colored wooden planks, was at least three feet long, four feet wide, and one foot tall. Id. Ms. Jost testified that the pallet had never appeared to be broken. Id. After Plaintiff removed the shoe boxes from the larger cardboard boxes, she would hand them to Mr. Amoroso and supervise him as he removed tissue paper from the shoes inside the smaller boxes. Id. ¶ 13. She would then use a garbage bag to collect the tissue paper. Id.

Around 11:00 a.m., Plaintiff left the stockroom for her break, while Ms. Jost remained in the stockroom supervising Mr. Amoroso. Id. ¶ 15. When Plaintiff returned to the stockroom at approximately 11:15 a.m., she entered through the double doors and began to walk toward Mr. Amoroso and Ms. Jost, who, according to Ms. Jost, were positioned between the entrance and the wooden pallet. Id. ¶¶ 17-19. As she walked towards them, Plaintiff tripped and fell. Id. ¶ 18-19. According to Plaintiff, she tripped over a long, thick piece of wood that she described as approximately three-to-four feet long, three inches thick, and four-to-five inches wide. Id. ¶ 20; Pls. Rule 56.1 Statement of Facts ("Pls. Facts") ¶ 4. Plaintiff described the piece of wood as being the color of unpainted, natural wood and as having a large nail sticking out of it. Pls. Facts ¶¶ 4-5.

Plaintiff testified that she did not see the piece of wood prior to taking her break and that she does not know where it came from or how long it was on the floor prior to her accident. Defs. Facts ¶¶ 21, 23-24. Although Ms. Jost remembers seeing Plaintiff fall and get back up, she does not recall seeing a piece of wood on the stockroom floor that day or being aware that one had been the cause of Plaintiff's fall. Id. ¶¶ 25-27. Neither Plaintiff nor Ms. Jost recalls seeing any Kmart employees in the stockroom around the time of the accident. Id. ¶ 22. Plaintiff did not report the incident to anyone at Kmart. Id. ¶ 28.

Plaintiff testified that, prior to the date of her accident, the stockroom was generally "a mess and full of garbage." Pls. Facts ¶ 3 (citing Defs. Mem. of Law ("Defs. Mem."), Ex. E, Dep. of Sawsan Khalil-Mirhom ("Pl. Dep.") 144). However, Plaintiff testified that she herself had never made any complaints about the stockroom to Kmart. Pl. Dep. 144. In a sworn affidavit, Amado Sarmiento, who has worked at Kmart for twenty-six years, including during the period that Plaintiff participated in the Program, stated that he was not aware of any prior similar incidents at the Kmart store or of any complaints concerning wood on the floor of the stockroom. Defs. Mem., Ex. G, Aff. of Amado Sarmiento ("Sarmineto Aff.") ¶¶ 2-3, 20-21.

Although he does not provide any documentation regarding the hours that he worked, Mr. Sarmiento states that he was working in the Kmart store as a Lead in the Footwear Department on the day of the accident. Id. ¶ 3. According to Mr. Sarmiento's sworn affidavit, his responsibilities working as a Lead in the Footwear Department included inspecting the floor of the stockroom, and he states that it was, more generally, the responsibility of every store employee to continuously patrol the stockroom for debris and/or liquid on the floor and to clean the floor if any is found. Id. ¶¶ 14-15, 17. He states that he "personally" inspected the stockroom floor for debris and/or liquid every thirty minutes while Program participants were at

4

the store, id. ¶ 16, although he does not refer to any records of these inspections. According to his affidavit, he never saw a three-to-four foot long piece of wood on the stockroom floor in the area where the Program participants worked and, had he seen such an item, he would have removed it. Id. ¶¶ 18-19.

Mario Tellez is, and was at the time of the accident, an assistant manager at the Kmart store on Hylan Boulevard. Affirmation in Supp. of Pls.' Opp'n, Ex. 1, Dep. of Mario Tellez ("Tellez Dep.") 5-6. At the time of Plaintiff's accident in November 2009, Mr. Tellez was working the overnight shift, which started at 10:00 p.m. and ended at 7:00 a.m. Id. at 7-8. Mr. Tellez testified that, although he was aware that Program participants worked at the Kmart, he did not see them working while he was on the overnight shift. Id. at 14-15. Mr. Tellez testified that the "warehouse" was not open to the public. Id. at 14. He testified to the presence of wooden pallets in what he referred to as the "receiving" area of the store, id. ¶ at 42, although the precise location of the "receiving" area is rather unclear from Mr. Tellez's testimony. At one point, he says: "Receiving. That's the warehouse." Id. at 17. However, in other parts of his testimony, he appears to refer to them as separate spaces. E.g., id. at 24 ("You have to walk in through receiving, not the warehouse."). It is, therefore, unclear from his testimony whether what he refers to as "receiving" is the same area as the stockroom in which Plaintiff's accident occurred. Nonetheless, Mr. Tellez testified that the pallets were approximately six feet by five feet, id. at 44, and that he had seen pallets break and portions of the wood from the pallets come apart, id. at 43. He did not describe where or under what circumstances he had seen such broken pallets. He also testified that, because he worked the overnight shift in November 2009, he did not know how often the receiving area would have been inspected in the morning hours between

8:00 a.m. and 12:00 p.m. or whether records were kept of inspections during those hours. Id. at 44. Regarding inspections of receiving, his deposition also contained the following testimony:

> Q: What I am asking is, were there people in November of '09, specific employees, that were charged with the duty of periodically checking the floors every hour, every five minutes, on some kind of schedule where they would just walk around and do a walk-through of the store?
>
> A: Yes, in the morning, they walk into receiving. I'm talking about the staff that walks into receiving. They're in charge to make sure the warehouse is clean.

Id. at 35-36.

## DISCUSSION

### A. Legal Standard

Although New York substantive law governs plaintiff's negligence action, federal procedural law provides the standard for summary judgment applicable to that action. Simoes v. Target Corp., No. 11 CV 2032(DRH)(WDW), 2013 WL 2948083, at *7 n.7 (E.D.N.Y. June 14, 2013); Casierra v. Target Corp., No. 09-CV-1301 (JG)(MDG), 2010 WL 2793778, at *1 (E.D.N.Y. July 12, 2010). Under federal procedural law, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The function of the court is not to resolve disputed issues, but to determine whether there is a genuine issue to be tried. Anderson v. Liberty Lobby. Inc., 477 U.S. 242, 249 (1986). "While genuineness runs to whether disputed factual issues can reasonably be resolved in favor of either party, materiality runs to whether the dispute matters, i.e., whether it concerns facts that can affect the outcome under the applicable substantive law." McPherson v. Coombe, 174 F.3d 276, 280 (2d Cir. 1999)

6

(quoting Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996)) (internal quotation marks and ellipses omitted).

In assessing whether summary judgment is appropriate, the court considers "the pleadings, depositions, answers to interrogatories and admissions on file, together with any other firsthand information including but not limited to affidavits." Nnebe v. Daus, 644 F.3d 147, 156 (2d Cir. 2011) (quoting In re Bennett Funding Grp., Inc., 336 F.3d 94, 99 (2d Cir. 2003)); see Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The moving party carries the burden of proving that there is no genuine dispute respecting any material fact and "may obtain summary judgment by showing that little or no evidence may be found in support of the nonmoving party's case." Gallo v. Prudential Residential Servs., 22 F.3d 1219, 1223-24 (2d Cir. 1994). Once this burden is met, in order to avoid the entry of summary judgment, the non-moving party "must come forward with specific facts showing that there is a genuine issue for trial." LaBounty v. Coughlin, 137 F.3d 68, 73 (2d Cir. 1998). In reviewing the record before it, "the court is required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." McLee v. Chrysler Corp., 109 F.3d 130, 134 (2d Cir. 1997).

B.     **Plaintiff's Negligence Claim**

Under New York law, "[i]n order for a plaintiff in a slip-and-fall case to establish a prima facie case of negligence against the property owner, the plaintiff must demonstrate (a) that the defendant created the condition that caused the accident, (b) that the defendant had actual knowledge of the condition, or (c) that the defendant had constructive notice of the condition." Casierra, 2010 WL 2793778, at *2; see also, e.g., Gerbi v. Tri-Mac Enters. of Stony Brook, Inc., 826 N.Y.S.2d 101, 102 (App. Div. 2006); Daniely v. Cnty. of Westchester, 747 N.Y.S.2d 239,

241 (App. Div. 2002). Plaintiff here does not argue that Kmart had actual notice of the alleged dangerous condition. Rather, at issue is whether Kmart, through its employees, created the condition that caused Plaintiff to trip or had constructive notice of the condition.

"The New York Court of Appeals has consistently instructed that negligence cases by their very nature do not lend themselves to summary dismissal since often, even if all parties are in agreement as to the underlying facts, the very question of negligence is itself a question for jury determination." Stephanides v. BJ's Wholesale Club, Inc., No. 12 CV 0083(CLP), 2013 WL 1694901, at *3 (E.D.N.Y. Apr. 18, 2013) (internal quotation marks omitted) (quoting McCummings v. N.Y.C. Transit Auth., 613 N.E.2d 559, 560 (N.Y. 1993)).

### 1. *Creation of the Condition*

To make out a prima facie negligence claim in a slip-and-fall case on the theory that a defendant created the dangerous condition causing a plaintiff's fall, New York courts require a plaintiff to show, first, that the defendant created the condition by an "affirmative" act and, second, that the act was not more likely attributable to a customer or someone else who was not an employee or agent of the defendant. Olsen v. K Mart Corp., No. 04-CV-3648 (JMA), 2005 WL 2989546, at *4-*5 (E.D.N.Y. Nov. 8, 2005). While mere speculation is not enough to survive summary judgment, see Moorman v. Huntington Hosp., 691 N.Y.S.2d 548, 549 (App. Div. 1999), circumstantial evidence may be sufficient to make out a prima facie negligence claim "if it supports an inference of causation," Olsen, 2005 WL 2989546, at *5. "It has long been recognized that, in circumstantial cases, the possibility that an accident may have been caused by factors other than defendant's negligence does not mandate a conclusion that plaintiff has failed to make out a prima facie case." Id. (quoting Brito v. Manhattan & Bronx Surface Transit Operating Auth., 590 N.Y.S.2d 450, 451 (App. Div. 1992)).

Defendants argue that, because there is no direct evidence that any Kmart employee was in or near the stockroom around the time of the accident, there is no evidence whatsoever that Kmart created the alleged condition. Defendants cite to a number of cases in which, absent direct evidence, courts refused to permit an inference of affirmative creation by a defendant's employees. However, those cases, unlike this case, involved objects that were small and easily knocked over or that were just as likely to have been moved by customers. Casiano v. Target Stores, No. 06 CV 6286(NG), 2009 WL 3246836, at *4 (E.D.N.Y. Sept. 24, 2009) (plaintiff slipped on laundry detergent spilled on store floor); Quarles v. Columbia Sussex Corp., 997 F. Supp. 327, 330-31 (E.D.N.Y. 1998) (plaintiff slipped on coffee in defendant's hotel lobby where coffee likely came from hotel); Fink v. Bd. of Educ., 498 N.Y.S.2d 440, 440 (App. Div. 1986) (plaintiff tripped on small, light-weight box in school supply room).

The facts here are much closer to those in Olsen, in which the presence of a sixteen-pound case of Spaghetti-Os in the middle of a Kmart aisle was sufficient circumstantial evidence for a reasonable jury to infer that the Spaghetti-Os were overlooked and left there by a store employee after restocking the shelves earlier that morning. 2005 WL 2989546, at *7. In Olsen, the court relied on reasonable inferences: "[A] sixteen pound box of cans, unlike a small box of office supplies, could not be jarred by a breeze or some other disturbance and fall unaided to the floor. The placement of the sixteen pound case on the floor was an 'affirmative act' committed by someone, the determination of who most appropriately rests with a jury." Id. at *9.

Like the sixteen-pound case of cans in Olsen, the large wooden plank that Plaintiff alleges she tripped on is of such a size and weight that its placement necessitates an affirmative act by someone. If a jury were to credit Plaintiff's testimony regarding the existence of the plank of wood, it could reasonably infer that a Kmart employee was responsible for placing it on the

9

stockroom floor from the facts that few non-employees had access to the stockroom, Tellez Dep. 14-18, Kmart regularly used wooden pallets for stacking stock and unloading merchandise, id. at 42-43, an employee testified to having seen such wooden pallets broken in the past, id. at 47, and Kmart associates would periodically enter the stockroom while Program participants were working there, Sarmiento Aff. ¶ 13. Plaintiff's testimony that she did not see any Kmart employees enter the stockroom around the time of the incident and Ms. Jost's lack of recollection are not conclusive proof, particularly when weighed against the unlikelihood that a customer or member of the Program would have placed a wooden plank in the stockroom. Accordingly, a genuine issue of material fact exists as to whether Kmart employees created the dangerous condition that allegedly caused Plaintiff's accident.

### 2. *Constructive Notice of a Recurring Condition*

Plaintiff also pursues a second theory of liability. She contends that defendants had constructive notice of the dangerous condition that caused her fall because it was a recurring condition. A number of intermediate appellate courts in New York have permitted negligence claims to proceed on a theory of constructive notice based on actual knowledge of a recurring condition. Fay v. Bass Hotels & Resorts, Inc., No. 00 Civ. 9107(MBM), 2003 WL 21738967, at *6 (S.D.N.Y. July 28, 2003) (compiling cases). Under New York law, "[t]o establish [constructive] notice under the recurring dangerous condition theory, plaintiffs must show that [plaintiff's] fall was caused by a specific recurrence of a recurring dangerous condition, about which defendants had actual notice." Id. "The plaintiff is not required to establish the defendant's knowledge of the existence of the exact item on which the plaintiff fell. However, the plaintiff must show that the defendant had such knowledge of the particular dangerous condition that is 'qualitatively different from a mere "general awareness" that a dangerous

condition may be present.'" Gonzalez v. Wal-Mart Stores, Inc., 299 F. Supp. 2d 188, 193 (S.D.N.Y. 2004) (internal citation omitted) (quoting Chin v. Harp Mktg., 648 N.Y.S.2d 697, 698 (App. Div. 1996)); see also Erikson v. J.I.B. Realty Corp., 783 N.Y.S.2d 661, 663 (App. Div. 2004) (requiring "more than a mere general awareness that a recurring dangerous condition may have existed").

In this case, Plaintiff argues that defendants were actually aware of a recurring dangerous condition because, according to Plaintiff's own testimony, there was generally debris on the stockroom floor and because one of Kmart's employees, Mr. Tellez, testified to having seen wooden pallets in the store break on a "weekly" basis. Plaintiff asserts that she "tripped on a piece of wood that could only have come from one of those broken wooden pallets." Pls. Opp'n.

Plaintiff principally relies on two cases. In the first, Chin v. Harp Marketing, 648 N.Y.S.2d 697 (App. Div. 1996), the plaintiff slipped and fell in a supermarket aisle. After being informed of the plaintiff's fall, a supermarket employee went to the aisle and found a broken bottle of salad dressing. Id. at 697. The employee testified regarding the aisle that, prior to the date of the incident, he had "seen certain displays of salad dressing, which were on sale that week, had broken due to customers taking them from the middle of the display and they fall." Id. The Appellate Division held that the employee's testimony was sufficient for "an inference [to be] drawn that defendant had actual knowledge of a recurrent dangerous condition and therefore could be charged with constructive notice of each specific reoccurrence of the condition." Id. (quoting Padula v. Big V Supermarkets, Inc., 570 N.Y.S.2d 850, 851 (App. Div. 1991)).

In the second principal case on which Plaintiff relies, Batista v. KFC National Management Company, 801 N.Y.S.2d 336 (App. Div. 2005), plaintiff slipped and fell as a result

of the presence of wood chips on a public sidewalk. The plaintiff adduced sufficient evidence to show that the wood chips on the sidewalk came from the defendant restaurant's property, and the restaurant's manager testified that her daily inspection frequently revealed the presence of wood chips on the subject sidewalk. Id. at 337. Accordingly, the Appellate Division held that the defendant had actual notice of the recurrence of the specific condition that caused the plaintiff's fall. Id.

Here, however, unlike in Chin and Batista, Plaintiff has produced little evidence connecting the wood on which she allegedly tripped to the wooden pallets from which she contends the wood came. Here, there is no evidence of a broken pallet found after the accident analogous to the broken salad bottle found in Chin. Instead, Plaintiff's argument relies on the assumption that, because the dangerous condition was a piece of wood and the pallets are made up of pieces of wood of a roughly similar size, the wood piece must have come from a pallet. This requires a more attenuated inferential leap than was involved in either Chin or Batista. See also Fay, 2003 WL 21738967, at *6 (granting summary judgment where plaintiff presented "pure speculation" that the liquid on which she allegedly slipped was a result of snow being tracked into the hotel, which plaintiff alleged was a recurring problem).

More importantly, there was a much tighter connection between the conditions of which the defendants were actually aware and the specific condition that caused the plaintiffs' injuries in Chin and Batista; they involved identical dangers being present in the exact same location and manner as in the plaintiffs' accidents. Here, Plaintiff offers as evidence of defendants' actual awareness of a recurring condition only her own statements that the stockroom was generally messy and Mr. Tellez's statements that he had seen pallets break in the past, without any elaboration as to where he had seen them break or whether he had seen them lying on the floor.

A "general awareness" that pallets break is not sufficient to constitute notice of the recurrence of broken pieces of wood lying around on the floor near the stockroom entrance; a closer connection between the previous occurrences and the occurrence causing Plaintiff's accident is required. See Daniely, 747 N.Y.S.2d at 241 (holding two prior instances of metal bar portions of expansion joints popping up in garage at least 100 feet from site where metal bar caused plaintiff's fall not sufficient to give notice of a recurring condition); Kraemer v. K-Mart Corp., 641 N.Y.S.2d 130, 131 (App. Div. 1996) ("[T]he defendant's general awareness of the fact that price and size tickets did at times fall from its shoes is insufficient to establish constructive notice of the particular condition which caused the plaintiff's fall."); Bernard v. Waldbaum, Inc., 648 N.Y.S.2d 700 (App. Div. 1996) ("general awareness" that produce may fall on supermarket floor insufficient to establish constructive notice of blueberries causing plaintiff's fall).

The facts and presentation of evidence in this case are much closer to those in Gonzalez v. Wal-Mart Stores, Inc., 299 F. Supp. 2d 188 (S.D.N.Y. 2004). In Gonzalez, the plaintiff tripped on a white plastic rope in a Sam's Club parking lot. Id. at 191. In arguing that the defendant was aware of a recurring condition in the parking lot, the plaintiff relied on her own testimony that she had previously seen similar ropes in the same parking lot and the testimony of a friend, who had been a Sam's Club employee, that she had also seen similar ropes in the parking lot. Id. at 191-92. Sam's Club's employees also provided affidavits as to their cleaning regimen for the parking lot and indicated that the parking lot was generally dirtier on weekends. Id. at 192. Judge Koeltl of the Southern District of New York held that "plaintiff ha[d] established at most that the defendants were generally aware that the parking lot accumulated boxes and other debris that customers discarded" but that this was not sufficient to constitute constructive notice of the rope that caused plaintiff's injuries. Id. at 194. In this case too,

13

Plaintiff's own testimony about general messiness and an employee's vague testimony about pallets sometimes breaking are not sufficient evidence to survive summary judgment. The circumstantial evidence presented may be sufficient to raise issues as to creation, but the connection to a recurring condition of which defendants had actual notice is not enough for a "recurring condition" theory of liability.

Despite the fact that Plaintiff fails to adduce sufficient evidence of a recurring condition, Plaintiff argues that summary judgment must be denied because "Kmart did not even attempt to establish that it lacked constructive notice of the wood on the floor" and "did not provide this Court with a shred of evidence showing when it last inspected or cleaned the premises . . . [or] with a single maintenance record from the day of the incident." Pls. Opp'n 10. Contrary to Plaintiff's assertions, however, defendants did provide the sworn affidavit of Mr. Sarmiento stating that he worked on that day and inspected the stockroom every thirty minutes while the Program participants were there. Gerbi v. Tri-Mac Enterprises of Stony Brook, Inc., 826 N.Y.S.2d 101 (App. Div. 2006), on which Plaintiff relies to argue that Mr. Sarmiento's statements are insufficient, is inapposite. In Gerbi, the court held that the defendant had failed to submit sufficient evidence of when the subject bathroom was last cleaned or inspected prior to the accident because, while defendants had submitted evidence of the store's "general inspection/cleanup policy," it had not provided any evidence regarding "whether this policy was followed on the day of the accident and . . . what the condition of the bathroom floor was within a reasonable time before the accident." Id. at 102. The evidence here is distinguishable from Gerbi because Mr. Sarmiento's affidavit indicates that the inspection policy was followed on the day of the accident. Such unrefuted statements from a store employee are sufficient to meet the defendant's burden at this stage to show that it lacked constructive notice. See Manzione v. Wal-

Mart Stores, Inc., 744 N.Y.S.2d 466, 467 (App. Div. 2002) (granting summary judgment where deposition and affidavit of store manager indicated that "she had no notice of any hangers on the floor at the time of the accident, that no store employees witnessed the accident, and that the store was periodically swept of debris"). Plaintiff struggles unsuccessfully to refute Mr. Sarmiento's statements with testimony from Mr. Tellez, but a careful reading of Mr. Tellez's testimony shows that it in no way contradicts Mr. Sarmiento's affidavit. Assuming that Mr. Tellez's references to "receiving" meant the same stockroom where Plaintiff's accident occurred, Mr. Tellez testified that there were employees who walked into receiving in the morning who made sure the warehouse was clean, but he made no suggestion that they did not continue inspecting the area throughout the day. More importantly, Mr. Tellez testified that he was working the overnight shift in November 2009 and had no knowledge as to the daytime inspection schedule for the receiving area. His testimony, therefore, cannot possibly be seen as contradicting that of Mr. Sarmiento.

Defendants have met their burden of showing the absence of constructive notice of the allegedly dangerous condition, and Plaintiff has failed to introduce any evidence creating a genuine factual issue for trial as to the existence of constructive notice. Accordingly, summary judgment is merited on this theory of defendants' liability.

   3.  *Open and Obvious Condition*

Although the Court denies summary judgment on the theory that defendants may be liable for the creation of the condition, defendants nonetheless argue that the alleged piece of wood "constituted an open and obvious condition that was not inherently dangerous as a matter of law," and thus cannot form the basis for a slip-and-fall negligence claim on any theory. Defs. Reply 13. This argument must be rejected because defendants have failed to eliminate triable

fact issues as to whether the condition was open and obvious and not inherently dangerous.

A landowner "has no duty to protect against an open and obvious condition provided that, as a matter of law, the condition is not inherently dangerous." Salomon v. Prainito, 861 N.Y.S.2d 718, 719 (App. Div. 2008). Where, however, a condition is open and obvious but nonetheless may be dangerous under the circumstances, courts generally agree that the open and obvious nature of the condition does not eliminate the possibility of a landowner's liability but instead raises a question for the jury as to a plaintiff's comparative negligence. See, e.g., id. ("open and obvious" nature of drainpipe does not preclude liability but relevant to comparative negligence); Cupo v. Karfunkel, 767 N.Y.S.2d 40 (App. Div. 2003) (same). "A condition is open and obvious if it is readily observable through the reasonable use of one's own sense." Glassberg v. Staples, No. 08-CV-2132 (KAM)(JMA), 2010 WL 3924682, at *3 (E.D.N.Y. Sept. 13, 2010), report & recommendation adopted by 2010 WL 3909206 (E.D.N.Y. Sept. 29, 2010). "The determination of whether an asserted hazard is open and obvious cannot be divorced from the surrounding circumstances." Clark v. AMF Bowling Centers, Inc., 921 N.Y.S.2d 273, 274 (App. Div. 2011) (internal quotation marks omitted).

Defendants ask the court to liken the facts here to those in Maldonado v. City of N.Y., 908 N.Y.S.2d 841 (Sup. Ct. 2010), in which the court granted summary judgment to the defendant on the grounds that the two-and-a-half foot tree branch over which the plaintiff tripped was open and obvious and inherent to the park where the accident occurred. Defendants argue that, because the tree branch was similar in size and material to the wooden plank here, this Court should find that the wooden plank was not inherently dangerous. Defendants mistake the Maldonado court's holding. The court in Maldonado relied not on the fact that the tree branch was not inherently dangerous but on the fact that the tree branch was "inherent or incidental to

the nature of [a park]." Id. at 843-44. The plaintiff in Maldonado herself testified: "Yes, we were surrounded by trees so you could see branches scattered around." Id. at 843. Quite unlike a fallen branch in a park full of trees, a three-foot wooden plank with a nail sticking out of it is not "inherent or incidental to the nature of" the entrance to a Kmart stockroom such that it would "be reasonably anticipated by those using [it]." Id. Brown v. Melville Industrial Associates, 823 N.Y.S.2d 697 (App. Div. 2006), is distinguishable from this case on the same grounds; the half dollar-sized rock in that case was likely to inhere to an outdoor parking lot in a way that a plank of wood in a walkway simply does not.

A plank of the dimensions described by Plaintiff lying across the floor near an entrance is also substantially different in nature from the majority of conditions found to be "open and obvious" or not inherently dangerous in the other cases to which defendants make reference. Those cases involved objects standing significantly higher off the ground or existing under conditions more likely to draw attention to their presence than a plank of wood rising no more than a few inches off the ground. See Matteo v. Kohl's Dep't Stores, Inc., No. 09 Civ. 7830(RJS), 2012 WL 760317 (S.D.N.Y. Mar. 6, 2012) (wheel sticking out less than three inches from clothing display rack where plaintiff was browsing merchandise); Glassberg, 2010 WL 3924682 (U-boat carrying boxed office chair rising at least three feet above the floor); Espinoza v. Hemar Supermarket, Inc., 841 N.Y.S.2d 680 (App. Div. 2007) (empty milk crates stacked in an aisle near employee who was restocking milk shelf); Maravalli v. Home Depot U.S.A., Inc., 698 N.Y.S.2d 708 (App. Div. 1999) (sink vanity lying in aisle). Additionally, in Glassberg and Matteo, on which defendants heavily rely, there were photographs or surveillance video showing the state of the alleged dangerous conditions and that they "stood out from [their] surroundings." Glassberg, 2010 WL 3924682, at *4; Matteo, 2010 WL 3924682, at *8. Here, there are no

17

photographs or video from which the Court can conclude that a reasonable juror would necessarily have to find that the plank that Plaintiff alleges she tripped over was open and obvious or not inherently dangerous. What is more, in Matteo, there was no dispute that the area was "well lit." 2010 WL 3924682, at *8. Contrary to defendants' assertions in this case, there is a factual dispute as to how well lit the Kmart stockroom was at the time of Plaintiff's alleged accident. See Pl. Dep. 54-55 (describing stockroom lighting as "weak").

The facts at hand are much closer to those in Salomon and Clark. In Salomon, the plaintiff tripped over a drainpipe that had blown from its normal position running alongside a pathway. 861 N.Y.S.2d at 719. Although not inherently dangerous in its normal position, there was a triable issue for a jury as to whether the drainpipe was inherently dangerous when lying partially across the pathway. Id. Here, even were the wooden plank not inherently dangerous under other circumstances, it is appropriately left to a jury to decide whether its position lying on the floor where persons were known to walk made it inherently dangerous under the circumstances. Similarly, in Clark, the plaintiff tripped over a knee-high table in the lobby of a bowling alley. 921 N.Y.S.2d at 273. The Appellate Division held that there were genuine factual disputes as to whether the table was open and obvious and not inherently dangerous in light of the plaintiff's allegations that there was inadequate lighting and the furniture was arranged in an unusual manner. Id. at 274. Here, where Plaintiff has likewise alleged "weak" lighting and an unusual position of the wood plank, these allegations create factual issues for a jury to decide.

C. **Plaintiff Husband's Derivative Claim**

Defendants also move for summary judgment on Plaintiff Husband's loss of consortium claim. Because Plaintiff's negligence claim, from which Plaintiff Husband's cause of action is

18

derived, is permitted to proceed in part, summary judgment is denied as to the loss of consortium claim.

## CONCLUSION

For the foregoing reasons, summary judgment is granted in part and denied in part. Defendants' motion is granted as to a constructive notice theory of negligence liability. However, Plaintiff has raised genuine issues of material fact as to whether defendants created the condition that allegedly caused her fall, and her claim based on that theory may proceed accordingly. As a result, Plaintiff Husband's loss of consortium claim may also proceed.

SO ORDERED.

                                                                    _/s/_____
                                                                    Allyne R. Ross
                                                                    United States District Judge

Dated:        January 13, 2014
                Brooklyn, New York